**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X

ADVANCE MAGAZINE PUBLISHERS INC.
d/b/a CONDÉ NAST,

            *Plaintiff*,

            v.

AUBREY DRAKE GRAHAM p/k/a DRAKE,
SHÉYAA BIN ABRAHAM-JOSEPH p/k/a 21
SAVAGE, and HILTZIK STRATEGIES, LLC,

            *Defendants*.

---------------------------------------------------------- X

No. _____

**COMPLAINT**

Plaintiff Advance Magazine Publishers Inc. d/b/a Condé Nast ("Condé Nast"), as and for

its Complaint against Defendants Aubrey Drake Graham p/k/a Drake ("Drake"), Shéyaa Bin

Abraham-Joseph p/k/a 21 Savage ("21 Savage") and Hiltzik Strategies, LLC ("Hiltzik Strategies"),

alleges as follows:

## NATURE OF THE ACTION

1.      Condé Nast is the owner of *Vogue* magazine, one of the longest-running and widely

recognized fashion publications in the world, as well as the VOGUE trademarks that the

magazine's tens of millions of print and online readers and the broader public associate exclusively

with *Vogue*.  This action arises out of a widespread promotional campaign recently launched by

world-famous musical artists Drake and 21 Savage, built entirely on the use of the VOGUE marks

and the premise that Drake and 21 Savage would be featured on the cover of *Vogue*'s next issue

as a means of promoting Defendants' newly released album *Her Loss*.

2.      All of this is false.  And none of it has been authorized by Condé Nast.  In

furtherance of their deceptive campaign, Defendants have gone so far as to create a counterfeit

issue of *Vogue* magazine—distributing copies in North America's largest metropolitan areas,

plastering posters of the counterfeit cover along streets and buildings throughout these cities, and disseminating images of the unauthorized counterfeit magazine to the more than 135 million social media users who actively follow Drake and 21 Savage on social media along with an untold number of others who have viewed false social media posts like this:



3.   To enhance the appearance of authenticity, the rollout of this false campaign deliberately mimicked the promotional activities undertaken and encouraged by Condé Nast in advance of the release of each issue of *Vogue*, which, like Defendants' false campaign, is accompanied by the placement of posters of the upcoming cover in central locations throughout major metropolitan areas, and social media posts from the cover model(s), as illustrated below with respect to September 2022 issue:



4.      Not surprisingly in light of the deliberately deceptive intent, rather than offer any indication that Defendants' supposed cover was of a counterfeit magazine, Defendants' social media posts on both Instagram and Twitter instead are accompanied by the following explicitly false statements: "**Me and my brother on newsstands tomorrow!!  Thanks @voguemagazine and Anna Wintour for the love and support on this historic moment.  Her Loss Nov 4th**."

5.      *Vogue* magazine and its Editor-in-Chief Anna Wintour have had no involvement in *Her Loss* or its promotion, and have not endorsed it in any way.  Nor did Condé Nast authorize, much less support, the creation and widespread dissemination of a counterfeit issue of *Vogue*, or a counterfeit version of perhaps one of the most carefully curated covers in all of the publication business in service of promoting Defendants' new album.

6.      That Defendants would knowingly violate Condé Nast's rights in this manner underscores the tremendous value that a cover feature in *Vogue* magazine carries, here, to amplify

3

sales of an album that was to be released days after Defendants commenced their deceptive campaign. This of course was Defendants' aim.

7.      The confusion among the public is unmistakable. Immediately following Defendants' deceptive social media posts, numerous media outlets published stories with titles like *Drake & 21 Savage Land Vogue Cover Ahead Of Collab Album 'Her Loss'*, *Drake and 21 Savage are Vogue's new cover stars*, and *Drake & 21 Savage Make History On The Cover Of 'Vogue'.* The reporting in these articles underscores the confusion caused by Defendants' deceptive campaign, including, for example, the following:

> While they've since confirmed that we'll be hearing the highly anticipated album this coming Friday (November 4), in the meantime, Drizzy [*i.e.* Drake] has shared the exciting news that he and the Saint Laurent Don will be the ones to grace the cover of the latest issue of *Vogue*, landing on newsstands today (October 31). … The accompanying cover story has yet to be released, but when it is, you can rest assured it will be loaded with all kinds of juicy information about the prolific rhymers and their work – both past, present, and future.

8.      User comments on the Internet also reflect this confusion, and the widespread belief that the counterfeit issue and counterfeit cover disseminated by Defendants were real:

- "Looking forward to picking this one up! @voguemagazine"

- "FINALLY OMG!!! like bffr…A FASHION ICON"

- "Something is telling me this will be a classic"

- "just wait until they talk about the album in the magazine tomorrow and they reflect on features"

- "you think it's gonna sell out before i can get to it tomorrow afternoon?"

- "Excited to read what they say about the project"

- "This project gonna be special. You not covering Vogue for some thrown together tape BS. (One can hope anyway)"

- "It's real. Also magazines can have multiple covers"

9.      Since as early as October 31, Condé Nast and its counsel engaged with Defendants repeatedly to demand that they cease their infringing activities and take appropriate remedial measures to curtail further public confusion, before the release of Defendants' album on November 4.  Nothing was done, with Defendants continuing to benefit from the infringing social media posts that would take seconds to take down.  Defendants' flippant disregard for Condé Nast's rights have left it with no choice but to commence this action and seek the immediate injunctive relief requested herein, together with any and all available monetary remedies to deter the type of flagrant infringements and false advertising in which Defendants have engaged.

## THE PARTIES

10.     Plaintiff Condé Nast is a New York corporation with its principal place of business at One World Trade Center, New York, NY 10007, and is the owner of *Vogue* magazine.

11.     Upon information and belief, Defendant Aubrey Drake Graham p/k/a "Drake" is an individual residing in Beverly Hills, California.

12.     Upon information and belief, Defendant Shéyaa Bin Abraham-Joseph p/k/a "21 Savage" is an individual residing in Alpharetta, Georgia.

13.     Upon information and belief, Defendant Hiltzik Strategies is a New York limited liability company with its principal place of business at 99 Madison Avenue, 17th Floor, New York, New York 10016.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338, and 28 U.S.C. § 1367, as this case arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and the state law claims arise under the same operative facts.

15.     The Court has personal jurisdiction over Defendants because, among other things, each Defendant may be found in New York, does systematic and continuous business in New York and/or has performed acts directed at and causing harm in New York which give rise to this action.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## FACTS RELEVANT TO ALL CLAIMS

### PLAINTIFF'S LONGSTANDING USE AND
### REGISTRATION OF THE VOGUE TRADEMARK

17.     Condé Nast and its predecessors have adopted and continuously used in commerce the well-known trademark VOGUE as the title of a fashion magazine since at least as early as 1892, and have operated a corresponding website (www.vogue.com) since at least as early as 1998. In the 130 years since its first publication, *Vogue* magazine has become one of the most widely recognized and revered fashion publications in the world.

18.     Condé Nast owns more than sixty active and valid U.S. registrations for trademarks comprised of the word "Vogue" and/or its well-known logo, with the earliest dating back to 1908 (U.S. Reg. No. 0,069,530) for use in connection with magazines.   Others include Reg. No. 0,125,542, issued  May 20, 1919, for the well-known logo for the VOGUE trademark, Reg. Nos. 0,504,006, 1,336,659, 2,592,452, 3,069,976, 4,138,408, 4,964,883, 4,964,884, 5,915,018, 6,324,126 and many others (collectively, the "Vogue Mark").   True and correct copies of the foregoing registrations are annexed hereto collectively as **Exhibit A**.

19.     Condé Nast and its predecessors have expended considerable time, resources, and effort in promoting the VOGUE Mark and developing substantial goodwill associated therewith throughout the United States during the 130-year history of its use in association with *Vogue* magazine.  Due to the continual use of the VOGUE Mark by Condé Nast and its predecessors over

that period, the VOGUE Mark has come to indicate a single source of goods and services.  And its specific stylization has long been well established:

# VOGUE

20.     The general public instantly recognizes and associates the VOGUE Mark with *Vogue* magazine.  So widespread is public knowledge of the magazine that *Vogue* was described by book critic Caroline Weber in a December 2006 edition of *The New York Times* as "the world's most influential fashion magazine."

21.     The United States edition of *Vogue* magazine is read by over 9 million people each month.  The corresponding U.S. website receives approximately 18 million unique visitors each month.

22.     In addition to its magazine and website, Condé Nast uses the VOGUE Mark on social media accounts associated with *Vogue* magazine, including Instagram, Twitter, Facebook and Pinterest.  Underscoring its reach, *Vogue* magazine has over 70 million social media followers, including over 41 million followers on Instagram (@voguemagazine), 15 million followers on Twitter (@voguemagazine), and nearly 10 million followers on Facebook (@Vogue Magazine).

23.     As a result of the longstanding and continuous use of the VOGUE Mark, the VOGUE Mark has acquired substantial goodwill and reputation and has become famous, as multiple courts have recognized in the past.

24.     A representative example of Condé Nast's easily recognizable *Vogue* magazine, using the VOGUE mark, is reflected on the cover of the current November 2022 issue:



**DEFENDANTS' FALSE, DECEPTIVE AND UNAUTHORIZED USES OF
THE VOGUE MARK TO PROMOTE THEIR NEW ALBUM *HER LOSS***

25.     Defendants' deceptive promotional campaign deliberately seeks to capitalize, and has capitalized, on the substantial goodwill and value associated with the VOGUE Mark to promote and drive up sales of Defendants' recently released album *Her Loss* (the "Album"), without Condé Nast's authorization.

26.     The Album was released on November 4.  On October 30, five days in advance of the Album's release, a Twitter account associated with Drake (@drakerelated) posted the

following image of the counterfeit magazine (the "Counterfeit Magazine"), showing the counterfeit cover (the "Counterfeit Cover"):



27.    The image was captioned with this announcement (attached as **Exhibit B**):



Newsstands tomorrow @Drake @21savage

Thanks to @voguemagazine and Anna Wintour for the love and support on this historic moment

#HerLoss Nov 4th

28.     Shortly thereafter, both Drake and 21 Savage posted the identically worded announcement on their own Instagram pages (attached as **Exhibit C**), with the identical arrangement showing the Counterfeit Cover:



29.     Neither Condé Nast nor Anna Wintour authorized the creation of the Counterfeit Magazine, the dissemination of images of the Counterfeit Cover, the use of the VOGUE Mark, or the use of its Editor-in-Chief Anna Wintour's name in this or any other manner.

30.     The unauthorized dissemination of images of the Counterfeit Cover continued thereafter.  Later on October 30, the Drake Related Twitter account released the following image (attached as **Exhibit D**), juxtaposing an image of the Counterfeit Cover with real issues of *Vogue* and other fashion magazines to further enhance the appearance of authenticity:



31.     The following morning at 10:40 am EDT, Defendant Hiltzik Strategies—upon information and belief, Defendants' public relations firm retained to promote *Her Loss*—sent out an email blast to an untold number of blind copy recipients advising that, "To celebrate Drake's Vogue cover and his joint album HER LOSS, Street teams will be handing out copies of the magazine Monday Afternoon in select cities across America."

32.     Approximately one hour later, at 11:44 am EDT, Condé Nast's Global Counsel for IP and Content Integrity, Christopher Donnellan, responded to Hiltzik Strategies by email

(attached as **Exhibit E**), making clear that Defendants' infringing activities were not authorized, and demanding that Defendants "immediately cease and desist this unauthorized use of the Vogue trademark by removing the Instagram post, ceasing any distribution of this 'magazine,' and issuing a public statement clarifying that this was not an actual cover of Vogue."

33.     Hiltzik Strategies replied with the perfunctory response: "Thank you for the email, letting you know that it was was [*sic*] received." (*See* Ex. E). Rather than take any of the remedial actions demanded by Condé Nast, Defendants thereafter intensified the unauthorized and deceptive advertising campaign.

34.     Following Defendants' receipt of Condé Nast's demand, the Drake Related Twitter account posted the multitude of locations at which the Counterfeit Magazine would be distributed in New York, Los Angeles, Atlanta, Miami, Houston and Toronto (attached collectively as **Exhibit F**), including, for example, the following locations just in New York and Los Angeles:

- Columbia University, Broadway & W 116th St
- W 125th St & Malcolm X Blvd, New York, NY 10027
- Canal St & Lafayette St, New York, NY 10013
- West 34th St & 8th Ave, Manhattan, NY 10123
- 4th Ave & Pacific St, Brooklyn, NY 11217
- Flatbush Av – Brooklyn College, Brooklyn, NY 11217
- 417 E Fordham Rd, The Bronx, NY 10458
- Dyckman St & Broadway, New York, NY 10034
- 179th St, Jamaica, NY 11432
- Forest Hills 71 Ave Station, Queens, NY 11375
- Kosher News, 370 N Fairfax Ave, Los Angeles, CA 90036
- Al's Newstand, 216 S Beverly Dr, Beverly Hills, CA 90212
- Farmers Market USPS, 6333 W 3rd St #818, Los Angeles, CA 90036
- The Locals News Stand, 217 W 6th St, Los Angeles, CA 90014
- Malibu J's Gift Shop, 1515 Ocean Ave, Santa Monica, CA 90401
- Century World News, 10597 W Pico Blvd

35.     Posts on social media propagated, showing copies of the Counterfeit Magazine that individuals had procured, including the following post on November 1:

12



36.    A review of the Counterfeit Magazine itself reveals that it is a complete, professionally reprinted reproduction of the October issue of Vogue, with unauthorized adaptations made in service of promoting Defendants' Album.[1]

_____

[1] Condé Nast has filed an application for copyright registration for the October issue that Defendants have infringed, and intends to file an amended complaint after registration is secured.

37.     Some pages have no modifications, constituting an exact reproduction of Condé Nast's copyrightable content.  Other pages are modified to superimpose promotional logos for Defendants' Album.  Others include images of Anna Wintour that were not in the real issue, and in one case was doctored to interpose an image of Drake.  Examples are shown below:



38.     Anna Wintour did not authorize the use of her image to promote Defendants' Album.  Upon information and belief, other than Defendants themselves, none of the other dozens of individuals whose images were in the authentic October issue of *Vogue*, and are now depicted in the Counterfeit Magazine, authorized the use of their images to promote Defendants' Album.

39.     Defendants also placed blown-up print posters of the Counterfeit Cover at various locations throughout these cities, including prominently throughout New York City:



40.     The Counterfeit Cover—as depicted in these posters, on Defendants' social media posts described herein, and on the face of the Counterfeit Magazine—provides no indication that it is anything other than the cover of an authentic *Vogue* issue.

### THE RESULTING PUBLIC DECEPTION AND CONFUSION

41.     Not surprisingly, widespread public confusion that the Counterfeit Cover and Counterfeit Magazine were authentic immediately followed.   Erroneous press accounts were issued, including the following (attached collectively as **Exhibit G**):

- **Yahoo News**[2] posted a Revolt article titled *Drake and 21 Savage land on the cover of 'Vogue'*, erroneously reporting: "**This Friday (Nov. 4), Drake and 21 Savage will unveil their joint album, Her Loss, to the masses.  Before that takes place,**

---

[2] *See* https://www.yahoo.com/video/drake-21-savage-land-cover-121225115.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS88&guce_referrer_sig=AQAAAABOaYOGhPbZdCdqNR42OvsMAho4pjfhDKuBYg2jbkXDFaZOvkPmMUbLHsCUgID_5nqmGQOfAs2RZ37R0ptUN98Opcd7osNUOkLanLXj1gzeRcfSdNSCuccF5RWe0BzzY5CGRKIiBJqvm0-F7vLmURxpHw7bwwGX9laXHVALXAft.

the chart-topping duo revealed that they've landed on the cover of Vogue's latest issue."

- **All Hop Hop**[3] posted an article titled *Drake & 21 Savage Land Vogue Cover Ahead Of Collab Album 'Her Loss'*, erroneously reporting: "**While Drake and 21 Savage delayed the release of their upcoming surprise album *Her Loss* earlier this week, the rollout continues with the two rappers appearing on the cover of iconic fashion bible *Vogue*.**"

- **HipHopDX**[4] posted an article titled *DRAKE & 21 SAVAGE COVER 'VOGUE' MAGAZINE AHEAD OF 'HER LOSS' ALBUM*, erroneously reporting: "**Drake and 21 Savage have covered the latest issue of *Vogue* alongside one another as their *Her Loss* joint project is set to arrive later this week.  The fashion magazine cover hit stands on Monday (October 31) featuring the pair of rappers draped in black threads with 21 keeping his face covered with his hand.**"

- **View the Vibe**[5] posted an article titled *Drake and 21 Savage are Vogue's new cover stars*, erroneously reporting: "**Drake and 21 Savage's new album Her Loss is not the only thing that's coming out this week. The rapper posted that the duo is Vogue's October cover star. …  This special edition of Vogue's October issue will be available at various locations across New York City. … Having the rappers on the cover of Vogue is definitely different for Vogue.**"

- **HotNewHipHop**[6] posted an article titled *Drake & 21 Savage Make History On The Cover Of "Vogue"*, erroneously reporting: "**While they've since confirmed that we'll be hearing the highly anticipated album this coming Friday (November 4), in the meantime, Drizzy [i.e. Drake] has shared the exciting news that he and the Saint Laurent Don will be the ones to grace the cover of the latest issue of *Vogue*, landing on newsstands today (October 31). … The accompanying cover story has yet to be released, but when it is, you can rest assured it will be loaded with all kinds of juicy information about the prolific rhymers and their work – both past, present, and future.**"

42.     The Wikipedia entry for the "List of *Vogue* (US) cover models" (*see*

https://en.wikipedia.org/wiki/List_of_Vogue_(US)_cover_models#2022) was updated to further

---

[3] *See* https://allhiphop.com/news/drake-21-savage-land-vogue-cover/.

[4] *See* https://hiphopdx.com/news/drake-21-savage-her-loss-vogue.

[5] *See* https://viewthevibe.com/drake-and-21-savage-are-vogues-new-cover-stars/.

[6] *See* https://www.hotnewhiphop.com/445575-drake-21-savage-make-history-on-the-cover-of-vogue.

reflect and propagate the public's erroneous belief that Drake and 21 Savage were cover models

on an authentic issue of *Vogue* magazine:

**2022** [ edit ]

| Issue ⬥ | Cover model ⬥ | Photographer ⬥ |
|---|---|---|
| January | Olivia Wilde | Annie Leibovitz |
| February | HoYeon Jung | Harley Weir |
| March | Kim Kardashian | Carlijn Jacobs |
| April | Bella Hadid | Ethan James Green |
| May | Rihanna | Annie Leibovitz |
| June / July | Dua Lipa | Tyler Mitchell |
| August | Emma Corrin | Jamie Hawkesworth |
| September | Serena Williams | Luis Alberto Rodriguez |
| October | Jennifer Lawrence | Tina Barney |
| November | Michaela Coel | Malick Bodian |
| December | Drake 21 Savage | |

43.    Public confusion is further reflected in user comments posted on various websites

and social media posts, including the following:

- "Looking forward to picking this one up! @voguemagazine"

- "FINALLY OMG!!! like bffr...A FASHION ICON"

- "Something is telling me this will be a classic"

- "just wait until they talk about the album in the magazine tomorrow and they reflect on features"

- "you think it's gonna sell out before i can get to it tomorrow afternoon?"

- "Excited to read what they say about the project"

- "This project gonna be special. You not covering Vogue for some thrown together tape BS. (One can hope anyway)"

- "It's real. Also magazines can have multiple covers"

**DEFENDANTS' CONTINUING VIOLATION OF CONDÉ NAST'S RIGHTS**

44.     Following its initial cessation demand on October 31, Condé Nast has attempted to resolve this matter amicably, including through counsel, predicated on the threshold requirement that Defendants take the necessary remedial measures to cease their infringing activities and remove the infringing materials from circulation.

45.     Defendants have refused, preferring to continue to exploit the VOGUE Mark (and Anna Wintour's name and image) to drive up sales of the Album through the social media posts depicting the Counterfeit Cover—with the explicitly false statements attesting to Condé Nast's and its Editor-in-Chief Anna Wintour's endorsement—the continued display of the posters showing the Counterfeit Cover in some of the largest metropolitan areas in North America, and the continued distribution of the Counterfeit Magazines.

46.     As of the date of this filing, all of the infringing posts remain available online, including on the social media accounts maintained by and/or associated with Drake and 21 Savage. Posters of the Counterfeit Cover continue to be plastered throughout New York, Los Angeles, Atlanta, Miami, Houston and Toronto.  And, upon information and belief, copies of the Counterfeit Magazine continue to be available for sale in these locations.

47.     Not only have Defendants refused to remove and cease dissemination of the infringing materials, but they have doubled down with new displays of the Counterfeit Cover, days after Condé Nast's initial demand (attached as **Exhibit H**):



## **FIRST CLAIM**
## **TRADEMARK INFRINGEMENT / COUNTERFEITING (15 U.S.C. § 1114)**

48.    Condé Nast repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

49.     Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), imposes liability against "[a]ny person who shall, without the consent of the registrant -- (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]"

50.     Condé Nast is the owner of the valid and incontestable VOGUE Mark, as described above.

51.     Defendants' use of Condé Nast's registered VOGUE Mark and colorable imitations thereof in connection with their online presence and the advertising and promotion of their goods and services in commerce, including in connection with the Counterfeit Cover, Counterfeit Magazine and Defendants' Album, is likely to cause confusion, and to cause mistake, and to deceive, in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

52.     Defendants' use of the registered VOGUE Mark and colorable imitations thereof constitutes willful trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

53.     By reason of Defendants' willful use of the counterfeit VOGUE Mark in connection with the promotion and distribution of the Album and the Counterfeit Magazine, Condé Nast is entitled, at its election, to recovery of (i) treble Defendants' profits from the sales of the Album and the Counterfeit Magazine, or treble Plaintiff's damages, whichever is greater (15 U.S.C. § 1117(b)); or (ii) statutory damages of up to $4,000,000 (15 U.S.C. § 1117(c)(2)); or (iii)

Defendants' profits and Plaintiff's damages, increased subject to the principles of equity, together with the costs of this action (15 U.S.C. § 1117(a)).

54.     Defendants' infringements have caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Condé Nast's property and business, entitling Condé Nast to injunctive relief (15 U.S.C. § 1116), including, without limitation, an order directing the removal and destruction of all physical copies of the Counterfeit Cover and Counterfeit Magazine.

55.     Defendants' intentional, deliberate, and willful use of the VOGUE Mark and colorable imitations thereof in connection with the Counterfeit Cover, Counterfeit Magazine and Album, with knowledge of Condé Nast's rights in the registered VOGUE Mark, renders this case exceptional, entitling Condé Nast to an award of reasonable attorneys' fees incurred in connection with this action.

## SECOND CLAIM
## FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION
## (15 U.S.C. § 1125(a))

56.     Condé Nast repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

57.     Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1), imposes liability against "[a]ny person who, on or in connection with any good or services, … uses in commerce any word, term, name, symbol, … or any false designation of origin, … which – (A) is likely to cause confusion, or to cause mistake, or to deceive … as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]"

58.     Defendants' use of the VOGUE Mark falsely suggests that Condé is the source of, has authorized, is associated with and/or has endorsed the Counterfeit Cover, the Counterfeit Magazine and Album, and is likely to deceive the relevant trade and public into believing that

these materials are authorized, associated with and/or endorsed or approved by, or provided in affiliation with, Condé Nast, in violation of 15 U.S.C. § 1125(a).

59.     By reason of Defendants' willful use of the counterfeit VOGUE Mark in connection with the promotion and distribution of the Album and the Counterfeit Magazine, Condé Nast is entitled to recovery of Defendants' profits and Plaintiff's damages, increased subject to the principles of equity, together with the costs of this action (15 U.S.C. § 1117(a)).

60.     Defendants' conduct has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Condé Nast's property and business, entitling Condé Nast to injunctive relief (15 U.S.C. § 1116), including, without limitation, an order directing the removal and destruction of all physical copies of the Counterfeit Cover and Counterfeit Magazine.

61.     Defendants' intentional, deliberate, and willful use of the VOGUE Mark and colorable imitations thereof in connection with the Counterfeit Cover, Counterfeit Magazine and Album, with knowledge of Condé Nast's rights in the registered VOGUE Mark, renders this case exceptional, entitling Condé Nast to an award of reasonable attorneys' fees incurred in connection with this action.

## THIRD CLAIM
### DILUTION (15 U.S.C. § 1125(c))

62.     Condé Nast repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

63.     The VOGUE Mark is distinctive and famous within the meaning of 15 U.S.C. § 1125(c) by virtue of its inherent and acquired distinctiveness; the long duration and wide extent of the VOGUE Mark's use; the long duration, wide extent, and wide geographic reach of advertising and publicity of the VOGUE Mark; the large volume and wide geographic extent of sales of goods

and services offered under the VOGUE Mark; the high degree of actual recognition of the VOGUE Mark; and the longstanding federal registrations of the VOGUE Mark.

64.     Defendants have used the VOGUE Mark in commerce in connection with the sale and distribution of the Counterfeit Magazine and Defendants' Album, for Defendants' commercial gain.

65.     Defendants' use of the VOGUE Mark is likely to cause dilution by blurring and/or tarnishment, by creating a false association between Defendants and *Vogue* magazine, impairing the distinctiveness of the VOGUE mark, and impairing the reputation and goodwill associated with the VOGUE Mark.

66.     Defendants' use of the VOGUE Mark was willfully intended to trade on the recognition of the famous VOGUE Mark and/or willfully intended to harm the reputation of the famous VOGUE Mark, such that Condé Nast is entitled to recovery of Defendants' profits and Plaintiff's damages, increased subject to the principles of equity, together with the costs of this action (15 U.S.C. § 1117(a)).

67.     Defendants' infringements have caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Condé Nast's property and business, entitling Condé Nast to injunctive relief (15 U.S.C. § 1116), including, without limitation, an order directing the removal and destruction of all physical copies of the Counterfeit Cover and Counterfeit Magazine.

68.     Defendants' intentional, deliberate, and willful use of the VOGUE Mark and colorable imitations thereof in connection with the Counterfeit Cover, Counterfeit Magazine and Album, with knowledge of Condé Nast's rights in the registered VOGUE Mark, renders this case exceptional, entitling Condé Nast to an award of reasonable attorneys' fees incurred in connection with this action.

## FOURTH CLAIM
## FALSE ADVERTISING (15 U.S.C. § 1125(a))

69.     Condé Nast repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

70.     Defendants have made false, deceptive, and misleading representations in their commercial advertising concerning the nature, characteristics, and qualities of their goods, services, and commercial activities, in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

71.     Defendants' false, deceptive, and misleading descriptions and representations— including that the Counterfeit Magazine and Counterfeit Cover are authentic, and that Condé Nast created, approved and/or endorsed the creation and dissemination of these materials—have deceived and are likely to deceive consumers.

72.     Defendants' false, deceptive, and misleading statements to promote sales of their Album and Counterfeit Magazine have damaged the goodwill and reputation that the VOGUE Mark has acquired over the 130-year period of its continuous use in connection with *Vogue* magazine, and caused economic injury to Condé Nast by, *inter alia*, diverting and/or suppressing sales of genuine issues of *Vogue*.

73.     Defendants' false and misleading statements and representations concerning the Counterfeit Magazine and Counterfeit Cover to market the Album are willful, deliberate, intentional and in bad faith.

74.     By reason of the foregoing, Condé Nast is entitled to recovery of Defendants' profits and Plaintiff's damages, increased subject to the principles of equity, together with the costs of this action (15 U.S.C. § 1117(a)).

75.     Defendants' conduct has caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Condé Nast's property and business, entitling Condé Nast to injunctive relief (15 U.S.C. § 1116).

76.     Defendants' knowingly false statements and representations concerning the Counterfeit Magazine and Counterfeit Cover renders this case exceptional, entitling Plaintiff to an award of reasonable attorneys' fees incurred in connection with this action.

## FIFTH CLAIM
## VIOLATION OF N.Y. GEN. BUS. LAW § 360-k

77.     Condé Nast repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

78.     Condé Nast is the owner of the valid and subsisting VOGUE Mark, as described above, which has been duly registered in New York.

79.     Defendants' use of the counterfeit VOGUE Mark and colorable imitations thereof in connection with the advertising, sale and distribution of their goods and services, including the Counterfeit Magazine and their Album, is likely to cause confusion, and to cause mistake, and to deceive, in violation of N.Y. Gen. Bus. Law § 360-k.

80.     For the reasons described herein, Defendants' acts of infringement are willful, intentional and deliberate, and have been committed with knowledge of Condé Nast's rights with respect to the VOGUE Mark, and in bad faith.

81.     By reason of Defendants' willful use of the counterfeit VOGUE Mark in connection with the promotion and distribution of the Album and the Counterfeit Magazine, Condé Nast is entitled to recovery of treble profits and damages, together with reasonable attorneys' fees, pursuant to N.Y. Gen. Bus. Law § 360-m.

82.     Defendants' infringements have caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Condé Nast's property and business, entitling Condé Nast to injunctive relief, including, without limitation, an order directing the removal and destruction of all physical copies of the Counterfeit Cover and Counterfeit Magazine.

**SIXTH CLAIM**
**COMMON LAW TRADEMARK INFRINGEMENT / UNFAIR COMPETITION**

83.     Condé Nast repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

84.     Condé Nast has acquired rights to the VOGUE Mark through its use over the course of *Vogue* magazine's 130-year history.

85.     Defendants' misappropriation and use of the counterfeit VOGUE Mark and colorable imitations thereof in connection with the advertising, sale and distribution of their goods and services, including the Counterfeit Magazine and their Album, is likely to cause confusion, and to cause mistake, and to deceive, in violation of Condé Nast's common law rights with respect to the VOGUE Mark.

86.     For the reasons described herein, Defendants' acts of infringement are willful, intentional and deliberate, and have been committed with knowledge of Condé Nast's rights with respect to the VOGUE Mark, and in bad faith.

87.     By reason of the foregoing, Condé Nast is entitled to an award of damages, including exemplary and punitive damages, in an amount to be determined at trial.

88.     Defendants' infringements have caused, and unless restrained by this Court will continue to cause, immediate and irreparable injury to Condé Nast's property and business, entitling Condé Nast to injunctive relief, including, without limitation, an order directing the removal and destruction of all physical copies of the Counterfeit Cover and Counterfeit Magazine.

## SEVENTH CLAIM
## VIOLATION OF N.Y. GEN. BUS. LAW §§ 349 AND 350

89.     Condé Nast repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

90.     Defendants' false, misleading, and deceptive statements, representations and advertising concerning the Counterfeit Cover and Counterfeit Magazine, and Condé Nast's endorsement thereof, constitute deceptive business practices in violation of N.Y. Gen. Bus. Law § 349.

91.     Defendants' false, misleading, and deceptive statements and representations of fact are directed toward consumers, and have resulted in harm to the public interest in New York and nationwide through the deception of the millions of consumers who have been deceived thereby.

92.     By reason of Defendants' conduct, Condé Nast has suffered injury in fact in an amount to be proven at trial.

93.     Defendants' conduct is and, at all relevant times, has been willful, deliberate, intentional, and in bad faith.

94.     By reason of the foregoing, Condé Nast is thus entitled to award of damages, including exemplary and punitive damages, in an amount to be determined at trial.

95.     Defendants' conduct has caused, and unless restrained by the Court will continue to cause, irreparable injury to Condé Nast and to members of the public, and should be enjoined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Condé Nast respectfully requests the following relief:

a.       Temporary, preliminary and permanent injunctive relief

   i.       enjoining and restraining Defendants, their agents, or anyone working for, in concert with or on behalf of any of the Defendants, and each of their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with Defendants (the "Restrained Parties"), from making, using, displaying, disseminating, or distributing: (i) copies or images of the Counterfeit Magazine or Counterfeit Cover; (ii) the VOGUE Mark, or any mark that is confusingly similar to, or a derivation or colorable imitation of, the VOGUE Mark, for commercial purposes, including, without limitation, to advertise, market, or promote the album *Her Loss*; (iii) Wintour's name, image or likeness for commercial purposes, including, without limitation, to advertise, market, or promote the album *Her Loss*; and/or (iv) any false or misleading statements or misrepresentations concerning the Counterfeit Magazine, the Counterfeit Cover and/or Drake and 21 Savage's participation or appearance in *Vogue* magazine (collectively, the "Enjoined Content").

   ii.       directing Defendants to take down and remove from public display and circulation: (i) all existing Internet and social media posts on all websites and social media accounts within Defendants' ownership, control, or direction, which contain or reflect the Enjoined Content; and (ii) all existing physical copies of the Counterfeit Cover and/or the Counterfeit Magazine,

in all locations, that were placed, displayed or circulated by or at the direction the Restrained Parties.

b.      An Order directing the Restrained Parties to deliver up for destruction all physical copies of any and all Enjoined Content, including, without limitation, all goods, labels, signs, prints, packages, wrappers, receptacles or advertisements depicting the Counterfeit Magazine and/or the Counterfeit Cover.

c.      On the First, Second, Third and Fourth Claims, an award, at Plaintiff's election, of (i) treble Defendants' profits from the sales of the Album and the Counterfeit Magazine, or treble Plaintiff's damages, whichever is greater; (ii) statutory damages of up to $4,000,000; or (iii) Defendants' profits and Plaintiff's damages, increased subject to the principles of equity, in an amount to be determined at trial.

d.      On the Fifth Claim, an award of treble Defendants' profits and Plaintiff's damages, in an amount to be determined at trial.

e.      On the Sixth and Seventh Claims, an award of damages, including exemplary and punitive damages, in an amount to be determined at trial.

f.      An award of costs and reasonable attorneys' fees.

g.      Pre-judgment and post-judgment interest.

h.      Such other and further relief as the Court deems just and proper.

Dated:  November 7, 2022
        New York, New York

                                        LOEB & LOEB LLP


                                        By: /s/ Wook Hwang
                                            Wook Hwang
                                            Frank D'Angelo
                                            Mary Jean Kim
                                            David Forrest
                                            345 Park Avenue
                                            New York, New York 10154
                                            Tel: (212) 407-4000

                                        *Attorneys for Plaintiff Advance Magazine
                                        Publishers Inc. d/b/a Condé Nast*