**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
: 
ADVANCE MAGAZINE PUBLISHERS INC. : No. _____
d/b/a CONDÉ NAST, :
:
Plaintiff, :
: **DECLARATION OF CHRISTOPHER P.**
-against- : **DONNELLAN IN SUPPORT OF**
: **PLAINTIFF'S MOTION FOR A**
AUBREY DRAKE GRAHAM p/k/a DRAKE, : **TEMPORARY RESTRAINING ORDER**
SHÉYAA BIN ABRAHAM-JOSEPH p/k/a : **AND PRELIMINARY INJUNCTION**
21 SAVAGE, and HILTZIK STRATEGIES, LLC, :
:
Defendants. :
:
-----------------------------------------------------------X

I, **CHRISTOPHER P. DONNELLAN**, hereby declare and state as follows:

1. I am currently employed as Global Counsel, IP & Content Integrity, at Condé Nast, where I have been employed for over 20 years. Plaintiff Advance Magazine Publishers Inc. d/b/a Condé Nast ("Condé Nast") is a global mass media company that owns numerous media brands including *Vogue* and its corresponding magazine and website. I submit this declaration in support of Condé Nast's motion for a temporary restraining order and preliminary injunction against Defendants Aubrey Drake Graham p/k/a Drake ("Drake"), Shéyaa Bin Abraham-Joseph p/k/a 21 Savage ("21 Savage"), and Hiltzik Strategies, LLC ("Hiltzik Strategies") (collectively, "Defendants").

2. This declaration is based upon my personal knowledge as well as knowledge I have acquired through examining records and documents at Condé Nast, unless otherwise stated below.

3. In my role at Condé Nast, I have become intimately familiar with the history of *Vogue*, the use of the VOGUE trademark and brand, and the success and renown of the *Vogue* brand. My responsibilities include working with Condé Nast employees and outside counsel to

coordinate maintenance and enforcement of Condé Nast's world-famous *Vogue* trademark portfolio to protect the *Vogue* brand and intellectual property, among other tasks. The continued success and renown of the VOGUE trademark and brand is inextricably intertwined with, and dependent upon, Condé Nast's policing efforts against confusingly similar marks and infringers and counterfeiters who attempt to trade off the mark's reputation and goodwill.

**I.     Condé Nast's World-Famous VOGUE Marks and Brand**

4.     For over 125 years, Condé Nast and its predecessors have continuously used the trademark VOGUE as the title of a fashion magazine.

5.     Condé Nast owns more than sixty active and valid U.S. registrations for trademarks comprised of the word "Vogue" and/or its well-known logo, with the earliest dating back to 1908 (U.S. Reg. No. 0,069,530) for use in connection with magazines.

6.     As relevant to this proceeding, the U.S. Patent and Trademark Office has awarded Condé Nast the following valid and subsisting trademark registrations in and to the below identified VOGUE marks, all of which are on the Principal Register (collectively, the "VOGUE Mark"). Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the following:

- Registration No. 0,125,542, registered on May 20, 1919, for the trademark VOGUE, for magazines with a first use date of December 17, 1892.

- Registration No. 0,504,006, registered on November 16, 1948 for the trademark VOGUE, for magazines with a first use date of December 17, 1892.

- Registration No. 1,336,659, registered on May 21, 1985 for the trademark VOGUE, for magazines with a first use date of December 17, 1892.

- Registration No. 2,592,452 registered on July 9, 2002, for the trademark VOGUE.COM, for "providing fashion and beauty information distributed over television, satellite, wireless and global computer networks" with a first use date of September 18, 2000.

- Registration No. 3,069,976, registered on March 21, 2006, for the trademark VOGUE, for "providing information about fashion via a global computer network" with a first use date of September 18, 2000.

- Registration No. 4,138,408, registered on May 8, 2012 for the stylized trademark **VOGUE**, for "Downloadable computer software applications for use in connection with smartphones, PDA devices, tablet computers and other portable and handheld digital electronic devices, namely, downloadable software for accessing, viewing, interacting with and downloading content and information from magazines and websites in the field of fashion, style and beauty" with a first use date of March 31, 2011.

- Registration No. 4,964,883, registered on May 24, 2016, for the stylized trademark **VOGUE**, for "Advertising; Promotional services, namely, promoting the goods and services of others via digital and mobile networks; E-commerce services, namely, facilitating e-commerce business transactions by processing electronic orders for purchases of goods and services via a global computer network" with a first use date of August 1, 2012.

- Registration No. 4,964,884, registered on May 24, 2016, for the stylized trademark **VOGUE**, for "Advertising; Promotional services, namely, promoting the goods and services of others via digital and mobile networks; E-commerce services, namely, facilitating e-commerce business transactions by processing electronic orders for purchases of goods and services via a global computer network" with a first use date of August 1, 2012.

- Registration No. 5,915,018, registered on November 19, 2019 for "entertainment and education services in the nature of podcasts in the field of fashion, culture, celebrities and lifestyle" with a first use date of September 10, 2015.

- Registration No. 6,324,126, registered on April 13, 2021 for "Transmission of video and audio content via digital networks and electronic communications networks" with a first use date of January 1, 2018.

7. The above-listed registrations for the VOGUE Mark (with the exception of the most recent, Reg. Nos. 5,915,018 and 6,324,126) are incontestable pursuant to 15 U.S.C. § 1065. Thus,

they constitute conclusive evidence of the validity of the VOGUE Mark, and Condé Nast's ownership of, and exclusive right to use, the VOGUE Mark.

8.　As a result of Condé Nast's (and its predecessors') longstanding and continuous use of the VOGUE Mark, and the extensive sales, marketing efforts, advertising, and promotional efforts directed to the goods and services sold and provided under the VOGUE Mark (discussed both herein and in the accompanying Declaration of Christiane Mack), the VOGUE Mark has acquired substantial goodwill and reputation, making it one of the most recognizable and famous fashion brands in the United States and abroad.

## II.　Defendants' Infringing Instagram Post

9.　On October 30, 2022, I discovered that a Twitter account associated with Drake (@drakerelated) had posted the following image of a counterfeit *Vogue* magazine (the "Counterfeit Magazine") earlier that same day, showing a counterfeit cover image featuring Drake and 21 Savage (the "Counterfeit Cover"), apparently as part of a concerted effort to promote Drake and 21 Savage's then soon-to-be released album, *Her Loss* (the "Album"):



10. The image was captioned with the announcement: "Newsstands tomorrow @Drake @21savage Thanks to @voguemagazine and Anna Wintour for the love and support on this historic moment #HerLoss Nov 4th[.]" *See* Exhibit A to the Declaration of Wook Hwang (hereinafter "Hwang Decl."), submitted herewith.

11. Shortly thereafter, on October 31, both Drake and 21 Savage made the identically worded announcement on their own Instagram pages (@champagnepapi and @21savage)[1] with the identical arrangement showing the Counterfeit Cover (the "Post"). *See* Hwang Decl., Ex. B. Below is a screenshot of the offending Post:



---

[1] *See* Aubrey Drake Graham, (@champagnepapi), INSTAGRAM, http://instagram.com/champagnepapi (last visited November 7, 2022); Shéyaa Bin Abraham-Joseph, (@21savage), INSTAGRAM, http://instagram.com/21savage (last visited November 7, 2022).

12. The Counterfeit Cover uses the exact same VOGUE Mark (same font, size and style) and mimics the look of an authentic issue of *Vogue* magazine.

13. Condé Nast did not authorize the creation of the Counterfeit Magazine, the dissemination of images of the Counterfeit Cover, or the use of the VOGUE Mark or Ms. Wintour's name in connection therewith.

14. The Counterfeit Magazine thus provides the false message that these were authentic *Vogue* images, and that Condé Nast, through its *Vogue* brand, endorsed Defendants and the forthcoming Album.

15. On October 31, 2022, at 10:40 am EDT, Defendant Hiltzek Strategies sent out an email blast by blind copy to an untold number of recipients advising that, "To celebrate Drake's Vogue cover and his joint album HER LOSS, Street teams will be handing out copies of the magazine Monday Afternoon in select cities across America." Attached hereto as **Exhibit 2** is the Hiltzek Strategies email blast, which was forwarded to me by a colleague.

16. About one hour later, at 11:44 am EDT, I responded to Hiltzik Strategies by email, (i) notifying them that Defendants' impermissible use of the VOGUE Mark and brand were creating confusion about whether Drake was in fact on the cover of *Vogue*, (ii) demanding that Defendants "immediately cease and desist this unauthorized use of the Vogue trademark by removing the Instagram post, ceasing any distribution of this 'magazine,' and issuing a public statement clarifying that this was not an actual cover of Vogue," and (iii) requesting that Defendants respond by acknowledging that they are taking corrective action. *See* Ex. 2 at 2 (10/31/22, 11:44 am Donnellan email to Hiltzik Strategies).

17. Hiltzik Strategies replied with the perfunctory response: "Thank you for the email, letting you know that it was was [sic] received." *See id*. at 1 (10/31/22, 11:59 am Hiltzik Strategies email to Donnellan).

18. I emailed Hiltzik Strategies again, at approximately 12:11 pm EDT, notifying them that the Post remained live on both Drake and 21 Savage's Instagram accounts, and requesting to be connected with Defendants' legal counsel. Thereafter, counsel for Drake, Stanton "Larry" Stein ("Mr. Stein") responded, and directed that further correspondence on the matter should go through him. Attached hereto as **Exhibit 3** is my email correspondence with Mr. Stein.

19. I continued to reiterate Condé Nast's demand that Defendants remove the Post, but to no avail. *See generally* Ex. 3 at 4-5. Indeed, throughout that same day (October 31), Condé Nast continued to discover new instances of Defendants' infringing conduct, all of which were communicated to Drake (through Mr. Stein), including that: (i) Defendants' placement of the Counterfeit Magazine on newsstands next to genuine issues of *Vogue* magazine was causing actual confusion,[2] (ii) physical posters featuring enlarged images of the Counterfeit Magazine were placed on 6th and Prince Streets in New York City[3], and (iii) numerous media outlets erroneously reported that Drake and 21 Savage had managed to land the cover of *Vogue*.[4] *See* Ex. 3 at 4-5.

20. Upon learning that information, it became clear to Condé Nast that the manner in which Defendants' Counterfeit Magazine was being "rolled out" to the public—through the iterative process of releasing social media images and physical poster-size images displayed in major metropolitan areas before the distribution of the physical magazine—was designed to mimic

---

[2] *See* Hwang Decl., Ex. D.

[3] Attached hereto as **Exhibit 4** is the photo taken by a *Vogue* staff member of the posters placed on 6th and Prince Streets in New York City. *See also* Ex. 3 at 4 (10/31/22, 11:59 am Donnellan Email to Stein).

[4] *See* Hwang Decl., Ex. G.

7

the actual promotional efforts typically undertaken by Condé Nast in connection with the rollout of genuine issues of *Vogue* and accompanying cover photos, and was thus further intentionally designed to mislead the public into believing that the Counterfeit Magazine was real. Indeed, all of Defendants' infringing activities tracked Condé Nast's typical efforts in promoting a cover, including the coordination of the rollout with its cover models, who often post the images to their own social media accounts, and the display of the cover images on posters around New York City.

21. Rather than take any of the remedial actions demanded by Condé Nast, Defendants' unauthorized and deceptive advertising campaign only amplified from there. Following Defendants' receipt of our demand, the Twitter account called "Drake Related" (which appears to be an official Twitter account affiliated with Drake himself) posted the multitude of locations at which the Counterfeit Magazine would be distributed in New York, Los Angeles, Atlanta, Miami, Houston and Toronto. *See* Hwang Decl., Ex. E.

22. It was not until approximately 3:30 p.m. that afternoon that I engaged in a telephone conversation with Mr. Stein, at which time it was agreed that Drake would remove the offending Post, cease all infringing activity, and issue a press release explaining that the Counterfeit Cover was not a real Vogue cover. *See* Ex. 3 at 4 (10/31/22, 4:27 pm Stein email to Donnellan).

23. It later became clear that this was a mere stall tactic, as Defendants never followed through on the commitment that had been offered through their counsel Mr. Stein.

## III. Defendants Continue to Use and Tradeoff the Goodwill of the VOGUE Mark

24. Even after demanding that Defendants cease their counterfeit, false, and misleading campaign, and despite Drake's assurances to the contrary, Condé Nast continued to uncover additional instances of Defendants' infringement of the VOGUE Mark.

25. For example, I learned that the Counterfeit Magazine itself was a reprinted October 2022 issue of *Vogue* which contained throughout its pages "Her Loss" logos and messaging on top

of original curated imagery. Attached hereto as **Exhibit 5** and **Exhibit 6**, respectively, are a scanned copy of the Counterfeit Magazine, in its entirety, and a physical copy of the Counterfeit Magazine that Defendants distributed (and are distributing) to the public.[5] *See* Hwang Decl., Ex. F (social media post showing purchase of Counterfeit Magazine).

26. Once again, I communicated this discovery to Mr. Stein, and demanded that "We need to know if there is any other part of this campaign that we are not yet aware of" given that "we are now blindsided by multiple uses of our brand without our knowledge or approval." *See* Ex. 3 at 3 (10/31/22, 2:28 pm Donnellan email to Stein).

27. Mr. Stein assured me that "my clients [Drake and Hiltzik Strategies] will do what you have asked to avoid litigation"—but, yet again, Defendants failed to take any remedial actions. *See id*. at 2-3 (10/31/22, 5:50 pm Stein email to Donnellan).

28. By 7:50 pm EDT on October 31, 2022, the Post had received over 600,000 likes on Drake and 21 Savage's Instagram pages, and Defendants had made no efforts to remove it nor explain to the public that the Counterfeit Cover was indeed a fake. Even *Yahoo! News* erroneously reported that Drake and 21 Savage had landed the cover of *Vogue*.[6] *See* Ex. 3 at 2 (10/31/22, 7:50 pm Donnellan email to Stein). Thus, I wrote to Mr. Stein that "[t]his is not what we agreed to" and that if his clients did not intend to honor the agreement, Condé Nast would move forward with litigation, seeking damages. *Id*.

29. Beginning on the morning of November 1, 2022, I informed Mr. Stein to direct any further communications to Condé Nast's counsel at Loeb & Loeb LLP, Wook Hwang. I am aware that additional communications transpired between Mr. Stein and Mr. Hwang, and that despite

---

[5] I understand that the physical copy of the Counterfeit Magazine is being separately delivered to the Court.

[6] *See* Jon Powell, *Drake and 21 Savage land on the cover of 'Vogue'*, yahoo.com (October 31, 2022) https://www.yahoo.com/video/drake-21-savage-land-cover-121225115.html; *see also* Hwang Decl., Ex. G.

additional and repeated demands made upon Defendants, on behalf of Condé Nast, to remove the Post and cease dissemination of the Counterfeit Magazine and images of the Counterfeit Cover, Defendants' infringing activities and unauthorized uses of the VOGUE Mark and brand continued unabated.

30. By way of example, I learned that the Counterfeit Cover was not merely displayed on Drake and 21 Savage's social media accounts, but distributed by Defendants to the general public via the Counterfeit Magazine. In addition, I learned that on November 4, 2022, *five days* after Condé Nast initially demanded that Defendants cease their infringing uses of the VOGUE Mark, both Drake and 21 Savage posted Instagram stories featuring the Counterfeit Cover. *See* Hwang Decl., Ex. K.

31. By that point, the confusion among the general public was so widespread that the Wikipedia article for the "List of *Vogue* (US) cover models" was publicly edited to list Drake and 21 Savage as the cover models for the December 2022 *Vogue* issue. *See id.*, Ex. H.

32. Further widespread public confusion is reflected in user comments posted to various websites and below various social media posts, including the following comments that are discussed in further detail in, and annexed to, the Hwang Decl.:

- "Looking forward to picking this one up! @voguemagazine"

- "FINALLY OMG!!! like bffr...A FASHION ICON"

- "Something is telling me this will be a classic"

- "just wait until they talk about the album in the magazine tomorrow and they reflect on features"

- "you think it's gonna sell out before i can get to it tomorrow afternoon?"

- "[I]sn't this like the second time US Vogue has had only men and no woman on the cover? that's huge"

10

- "Which other male rappers have covered vogue ? Maybe that's the historic angle. Or just how rare it is"

- "Excited to read what they say about the project"

- "This project gonna be special. You not covering Vogue for some thrown together tape BS. (One can hope anyway)"

- "It's real. Also magazines can have multiple covers"

See Hwang Decl., Exs. B and I.

33.     As of the date of this declaration, all of the infringing posts remain available online, including on the social media accounts maintained by and/or associated with Drake and 21 Savage; physical posters of the Counterfeit Cover continue to be plastered throughout New York, Los Angeles, Atlanta, Miami, Houston and Toronto; and copies of the Counterfeit Magazine continue to be circulated in these locations.  See id., Exs. C, E and F.

34.     Defendants' activities have caused actual confusion amongst the public as to the origin and sponsorship of the Counterfeit Cover and Counterfeit Magazine, and Condé Nast's (non-existent) approval and endorsement of the Album.  As a result, Condé Nast has lost its ability to control and cultivate *Vogue*'s brand image and reputation through the selection of cover models. Unless Defendants' actions are stopped, Condé Nast will suffer irreparable harm from the loss of its ability to control the goodwill and reputation of the *Vogue* mark and brand.

I declare under penalties of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 7, 2022

_____
Christopher P. Donnellan

23109670